IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

AHMED ELDIB,

    Plaintiff,

v.                                          Civil Case No. 3:15-cv-118

BASS PRO OUTDOOR WORLD, L.L.C
d/b/a BASS PRO SHOPS OUTDOOR WORLD,

    Defendant.

## OPINION

In February 2013, Ahmed Eldib went to a local Bass Pro Shops ("Bass") store to pick up an AR-15 assault rifle he ordered from an out-of-state dealer. The staff at Bass refused to give Eldib the rifle due to his alien status. As a result, Eldib claims that Bass intentionally inflicted severe emotional distress on him by mistreating him and making racially-charged comments based on his citizenship. Bass filed a motion to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure. Despite outlining an understandably frustrating customer service experience, Eldib's complaint fails to state a claim for intentional infliction of emotional distress because he does not show that Bass engaged in extreme and outrageous conduct or that he suffered severe emotional distress. Upon review of the complaint, the Court grants the motion to dismiss and denies Eldib leave to amend because the proposed amendment would be futile.

## I. FACTS

In 2013, Eldib, a legal resident alien residing in Virginia,[1] purchased an AR-15 assault rifle from an independent dealer in Georgia. The dealer shipped the gun to Bass in Ashland,

---

[1] Eldib has since become a United States citizen.

Virginia, where Bass would serve as a local third-party dealer and verify Eldib's identification to complete the sale. Eldib went to pick up the rifle from Bass on February 8, 2013, and provided the sales clerk with his driver's license and green card. The clerk refused to complete the sale, alleging that Eldib, as a non-citizen, could not purchase a gun. Despite Eldib's explanation that he had established permanent residency in the United States, which allowed him to legally purchase the rifle, the employee threw the identification cards on the counter and said they probably would not work. Eldib says that a manager also humiliated him by telling him in front of other customers that he could not purchase the rifle unless he had American citizenship.

When Eldib returned to Bass two days later, another manager told him non-citizens could not purchase guns. In response, Eldib showed the manager the form used for similar gun purchases, which stated that a person may use an "Alien registration card" as a form of identification. During the conversation, a sales clerk allegedly stated, "You do not expect me to go to your country and buy an assault rifle do you? So why are you so upset? You will get your money back."

Later that week, a Bass manager realized the mistake and reached out to Eldib to correct the misunderstanding. He apologized for the problems and told Eldib that he had a legal right as a permanent resident to purchase the rifle. By that time, however, Eldib had gone to a different store to purchase the AR-15, so he cancelled the transaction with Bass.

As a result of the emotional trauma and humiliation of the experience, Eldib brought this action against Bass and alleges intentional infliction of emotional distress ("IIED").

## II. DISCUSSION[2]

### A. Intentional Infliction of Emotional Distress

A plaintiff bringing a claim for IIED must plausibly allege facts that show "(1) 'the wrongdoer's conduct was intentional or reckless'; (2) 'the conduct was outrageous and intolerable'; (3) 'there was a causal connection between the wrongdoer's conduct and the emotional distress'; and (4) 'the emotional distress was severe.'" *Hatfill v. New York Times Co.*, 532 F.3d 312, 325–26 (4th Cir.2008) (quoting *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145, 148 (1974)). The plaintiff may recover "for emotional distress, unaccompanied by physical injury," so long as he satisfies each element. *Womack*, 215 Va. at 342, 210 S.E.2d at 148. Bass does not dispute that Eldib's complaint satisfies the first and third elements, so the Court focuses on the outrageousness of Bass's conduct and the resulting emotional distress.

With respect to the outrageous-conduct element, liability arises "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987). When the conduct involves racial slurs or innuendo, context matters: "as with other admittedly hurtful conduct, racial allusions may be found not actionable as at worst 'mere insult,' or actionable as 'intolerably atrocious conduct,' depending on the context." *Id.* The label "extreme and outrageous conduct"

---

[2] A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contested facts in the case or the factual basis of a claim or defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiff's allegations, however, must consist of sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires the plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

applies only to acts that "shock the conscience." *See Kling v. Harris Teeter, Inc.,* 338 F. Supp.2d 667, 674 (W.D.N.C. 2002). "Examples of such conduct include firing a weapon into an occupied vehicle, shoving an elderly man, and nonconsensual sexual touching of female workers by male supervisors." *Id.*

Eldib alleges that Bass exhibited extreme and outrageous conduct by continuously thwarting his legal right to purchase an assault rifle and making racially-charged remarks about his citizenship status in front of other customers. The conduct alleged by Eldib, though rude and hurtful, does not shock the conscience. As such, it fails to rise to the level of outrageousness required for to state a claim for IIED.

With respect to the damages element, Eldib's complaint likewise fails. The term "emotional distress" refers to mental suffering, anguish, or shock and "includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Russo v. White,* 241 Va. 23, 27, 400 S.E.2d 160, 163 (1991) (citing Restatement (Second) of Torts § 46 cmt. j (1965)). Liability, however, "arises only when the emotional distress is so extreme and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* Effects such as embarrassment and depression resulting in physical therapy and psychiatric treatment "amount only to an assertion of run-of-the-mill physical ailments and stress," which do not meet the high threshold for an IIED claim. *Gray v. Home Depot,* No. 3:14-cv-488 2015 WL 224989, at *5 (E.D. Va. Jan. 15, 2015). Similarly, nervousness, insomnia, withdrawal from activities, and loss of concentration do not rise to the level of severity needed for a successful IIED claim. *See Russo,* 241 Va. at 28, 400 S.E.2d at 163.

Eldib insists that, as a result of Bass Pro Shops' conduct, he has suffered extreme anguish, mental pain and suffering, public humiliation, and financial hardship. He also contends that he has undergone counseling and has exhausted his personal vacation time and sick leave dealing with the emotional distress. These allegations do not meet high threshold of severity that "no reasonable person could be expected to endure." Accordingly, Eldib's complaint fails to adequately allege the emotional-distress element of IIED.

Because Eldib fails to provide facts that show the second and fourth elements of IIED, he fails to state a claim.

### B. Leave to Amend

In his opposition to Bass's motion to dismiss, Eldib seeks leave to amend his complaint to add allegations that "(1) the Defendants violated the Virginia Human Rights Act, Virginia Code Ann. § 2.2-3900 et seq., (2) Defendant Bass Pro Shops was negligent in hiring and training; and (3) Defendant Bass Pro Shops, an alleged place of public accommodation, violated 42 U.S.C. § 2000." (Dk. No. 4 at 9.) Eldib appears to lift these claims from a case mentioned by Bass in support of its motion to dismiss, *Gray v. Home Depot*, No. 3:14-cv-488, 2015 WL 224989 (E.D. Va. Jan. 15, 2015) (Payne, J.), which also involved allegations of racial insensitivity in a customer service setting.

A court may deny leave to amend if "the proposed amendments could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citing *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985)). Here, amendment would be futile. This Court previously dismissed each of the new claims Eldib seeks to allege in the *Gray* action, and the same reasons would apply here. The Virginia Human Rights Act, Va. Code § 2.2-3900 et seq., allows a private right of action only in specific employment contexts that do not apply here. *See*

5

Va. Code § 2.2-3903(B), (C). Negligent hiring has only been applied to cases involving physical injuries, *see Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 320 (4th Cir. 2009), and Virginia does not recognize "negligent training" as a cause of action, *see Morgan v. Wal-Mart Stores East, LP*, No. 3:10-cv-669, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010). Finally, retail stores such as Bass do not fall within the requirements Title II of the Civil Rights Act as a "place of public accommodation." *See Gray*, 2015 WL 224989, at *8. In short, none of Eldib's proposed amended claims would survive a motion to dismiss, so the Court denies leave to amend.

### III. CONCLUSION

For the reasons stated, the Court GRANTS Bass Pro Shops' motion to dismiss and DISMISSES the complaint.

The Court will enter the appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: July 29, 2015
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

6